**In re Lawrence L. MAYER, Debtor.**

**Bankruptcy No. 93–02230–A7.**

United States Bankruptcy Court,
S.D. California.

June 29, 1993.

Charles D. Richmond, Gade and Gade, San Diego, CA, for movant.

Laura K. Kail, Solana Beach, CA, for debtor.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

Alfred and Ruth Nadel, judicial lien-holders, filed an objection to the debtor's claim of homestead exemption. The Nadels assert that the debtor is not entitled to the homestead exemption under state law.

This proceeding to determine the allowance of debtor's homestead exemption is a core matter as defined by 28 U.S.C. § 157(b)(2)(B), and this Court may issue a final judgment subject to review as provided by 28 U.S.C. § 158.

### FACTS

On November 6, 1989, Alfred and Ruth Nadel ("Nadel" or "creditor") obtained a judgment against Lawrence L. Mayer ("Mayer" or "debtor") in the amount of $40,052.62. On December 19, 1989, Nadel recorded the abstract of judgment against real property owned by Mayer located at 1597 Casa Real Lane, San Marcos, California. At the time the judicial lien attached, Mayer used the property as a rental. The property did not become Mayer's principal residence until sometime in July 1992, when he re-occupied the house.

On March 3, 1993, Mayer filed for protection under Chapter 7 and claimed an automatic homestead exemption of $100,000, for the property under Calif.Code of Civ. Proc. §§ 704.710 and 704.730. Mayer claims that he is entitled to the $100,000 homestead exemption under CCP § 704.-710, because he is older than 55 with a gross annual income of less than $20,000.

Nadel timely objected to Mayer's homestead exemption. In the alternative, Nadel claims the homestead exemption amount should be the amount in effect in 1989, when the judgment lien attached, not the amount permitted as of the petition filing date.

### ISSUES

There appears to be a conflict between California's exemption statute and the Bankruptcy Code's provisions that facilitate claiming and securing exemptions. Section 522(b) of the Bankruptcy Code ("Code") permits the debtor to select from the Code's list of exempt property or from the list of exemptions provided by the debtor's state domicile. Section 522(b) also authorizes the states to "opt-out" of the Code's exemptions and limit their residents to exemptions available under state laws. California has opted out. Therefore, the Court must first analyze Mayer's homestead right strictly under California's exemption law. Then, the Court must determine how his state exemption rights are impacted by the federal bankruptcy laws.

1. Without considering the bankruptcy laws, would the debtor be entitled to the automatic homestead exemption under state law?

2. Does the avoidance provision of § 522(f) affect the operation of state exemption laws and/or alter the substantive rights they provide?

3. Is the homestead exemption amount fixed at the time a judicial lien attaches or at the time of the bankruptcy filing?

### DISCUSSION

#### I.

 California allows the homeowner to choose between two types of homestead exemptions—the automatic and the declared homestead.[1] The automatic homestead attaches to the principal dwelling of each homeowner in the state; the homeowner need not file any record to obtain its protection. Cal.Code of Civ.Proc. § 704.-710(c) (West 1987). The declared homestead, in contrast, does not attach automatically. It requires the homeowner to record a declaration in the office of the county recorder where the property is located. Cal.Code of Civ.Proc. § 704.910 (West

---

1. California's homestead statute does not actually label the first exemption statute "automatic homestead". In fact, the statute does not label it at all. See Cal.Code of Civ.Proc. § 704.710 (West 1987). The label "automatic homestead" best describes its distinguishing feature.

1987). After filing, the provisions of the declared homestead replace those of the automatic homestead. In this case, the debtor did not file a homestead declaration. Thus, only the automatic homestead exemption of Cal.Code of Civ.Proc. § 704.710 is potentially applicable.

Section § 704.710(c) provides that:

"Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead. Cal.Code of Civ.Proc. § 704.710(c) (West 1987).

The automatic homestead exemption does not operate against liens recorded before the debtor acquired his home; the debtor or the debtor's spouse must actually have resided in the home on the date the lien was recorded. See, e.g. *In re Anderson*, 824 F.2d 754, 758–759 (9th Cir.1987); *In re Yau*, 115 B.R. 245, 248–249 (Bankr.C.D.Cal. 1990). This limitation precludes a debtor from purchasing a home or moving into a dwelling for the sole purpose of defeating creditors. Cal.Senate Legislative Comment to Cal.Code of Civ.Proc. § 704.710(c) (West 1987).

In this case, the property was not the principal residence of the debtor when the lien attached. Since the debtor did not meet the residency requirement of the homestead exemption, under California law, his claim to the automatic homestead exemption would be ineffective against the preexisting lien.

## II.

 Section 522(f), the lien avoidance provision in the Code, allows the debtor to "avoid" certain liens that impair the debtor's full exemption. 11 U.S.C. § 522(f). The purpose of § 522(f) is to provide the debtor with a "fresh start". H.R.Rep. No. 595, 95th Cong., 1st Sess., 366–367 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 81 (1978), reprinted in 1978 U.S.Code Cong. &

Admin.News 5787, 6087. The fresh start concept is the basic foundation of Congressional intent in enacting the Code for individual debtors seeking bankruptcy relief. *Id.*

The issue that arises here is how the "avoidance" provision of § 522(f) of the Code affects California's homestead exemption laws. Section 522(f) provides, in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled* under subsection (b) of this section, if such lien is—

(1) a judicial lien, or

(2) a nonpossessory, nonpurchase-money security interest....

11 U.S.C. § 522(f) (emphasis added).

By implication, the Nadels object to the applicability of this section and argue that the state exemption law is controlling. In addition, they would argue that § 522(f) does not state that the debtor may avoid liens which impair an exemption to which the debtor is entitled under § 522(b). Instead, § 522(f) uses the words "would have been entitled." Since California opted-out of the federal exemption law, the language can be read to mean that the debtor may claim the amount of exemption he would have been allowed under the state's exemption law had the state permitted avoidance of judicial liens and nonpossessory, nonpurchase-money security interests. Allowing § 522(f) to supersede state law significantly increases the debtor's right to exempt property when compared to California law.

 The questions raised are whether Congress intended the "avoidance" provision of the Code to alter the substantive rights provided under state law, and whether Congress intended to apply the avoidance power to both opt-out and Code-exemption states. If federal and state laws conflict, federal law will govern. *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Ware*, 414 U.S. 117, 139, 94 S.Ct. 383, 396, 38 L.Ed.2d 348 (1973). To determine whether a state and a federal law conflict,

the Court must examine the construction given to both laws, and ask whether the state law "[S]tands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). To construe a statute, first one looks to its plain meaning. *U.S. v. Barbier*, 896 F.2d 377, 378 (9th Cir.1990). If the plain meaning of a statute is unclear, statutory interpretation requires an examination of the legislative history and intent surrounding the enactment of the statute. *Mobil Sales & Supply Corp. v. Panamax Venus*, 804 F.2d 541, 542 (9th Cir.1986)

■ Legislative history reveals that Congress did intend that § 522(f) should operate in opt-out states. The policy and effect of § 522(f) is explained:

> Subsection (f) protects the debtor exemption, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien.... The avoiding power is independent of any waiver of exemptions.

House Report No. 95–595 at 362, reprinted in 1978 U.S.Code Cong. & Admin.News at 6318. *See, also*, 3 *Collier on Bankruptcy* § 522.29 at 101 (15 ed. 1993). Also, the Senate report included the same avoidance provision in its final draft. The official comments to this provision state that the debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien. Senate Report No. 989, 95th Cong., 2d Sess. 6 (1977), reprinted in U.S.Code Cong. & Admin.News 5787, 5792 (1978). Thus, Congress and the Senate chose to preserve the debtor's fresh start at the expense of secured creditors, and this policy should apply to both opt-out and Code-exemption states.

■ Ninth Circuit case authority upholds the debtor's ability to avoid preexisting liens, despite state law to the contrary. *In re Baxter*, 19 B.R. 674 (9th Cir. BAP 1982). Under § 522(f), the court must determine whether the debtor would have been entitled to the exemption in the absence of the lien. *See In re Morgan*, 149 B.R. 147 (9th Cir. BAP 1993); *Owen v. Owen*, —— U.S. ——, —— – ——, 111 S.Ct. 1833, 1836–1837, 114 L.Ed.2d 350 (1991); *In re Galvan*, 110 B.R. 446, 450 (9th Cir. BAP 1990). The nature and extent of a debtor's exemption rights are determined as of the date of the petition. *In re Herman*, 120 B.R. 127, 130 (9th Cir. BAP 1990). "The state of affairs considered by the court is hypothetical, not actual." *Morgan*, 149 B.R. at 153 (*citing Owen*, —— U.S. at ——, 111 S.Ct. at 1837). Therefore, the judicial lien is considered non-existent until the date of the bankruptcy, "at which time there is a hypothetical attempt to levy on the property." *In re Morgan*, 149 B.R. at 153. Thus, the legislative history and the holdings in this circuit provide that the debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien.

In this case, Mayer is permitted to claim a homestead exemption in bankruptcy for his residence that is subject to a preexisting lien. Extended further, Mayer could have purchased a home or moved into a home he owned for the sole purpose of claiming a homestead exemption in bankruptcy. This exemption planning is clearly contemplated by Congress:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

Senate Report No. 95–989 at 76, reprinted in 1978 U.S.Code Cong. & Admin.News at 5862.

### III.

■ The remaining question is the proper amount of Mayer's state homestead exemption. It is well established that every statute will be construed to operate prospectively unless legislative intent to the contrary is clearly expressed. *Medical Finance Assn. v. Wood*, 20 Cal.App.2d Supp. 749, 63 P.2d 1219 (1936). This rule is especially applicable to cases where retro-

active operation of the statute would impair the obligations of contracts or interfere with vested rights. *Jones v. Union Oil Co.*, 218 Cal. 775, 778, 25 P.2d 5 (1933); *In re Wilson*, 31 B.R. 395 (Bankr.S.D. 1983). But even if a retroactive intent can be found in the statute, the application of a new exemption amount to execution on a judgment based on a preexisting contract is prohibited under the United States' Constitution (art. I, § 10) and the Constitution of California (art. I, § 9). Laws impairing the obligation of contracts are forbidden. *Medical Finance Assn. v. Wood*, at 749, 750, 751, 63 P.2d 1219.

In this case, when the Nadels' judicial lien attached in 1989, it created a vested right. An increase in the statutory exemption amount cannot be applied retroactively to impair Nadel's vested right. Thus, the proper amount of homestead exemption is the amount to which Mayer would have been entitled when Nadel's lien attached in 1989.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to FRBP 7052. Debtor's counsel is directed to prepare an order in conformance with this Memorandum Decision within 10 days from its entry.